## Hahn v. Efkovich et ux.

*Herbert F. Laub*, for plaintiff; *Victor J. Abel*, for defendants.

STEWART, P. J., July 21, 1930.—The following is a summary of the facts:

The plaintiff owns two tracts of land, containing 108 acres, in the Township of Lower Nazareth, upon which he resides. The defendant, Annie Efkovich, is the owner of a tract of unenclosed woodland, containing 1.95 acres of land, which adjoins plaintiff's land. On this unenclosed woodland there is a lane or driveway about nine or ten feet wide, extending from the public road southwardly 368.48 feet to plaintiff's lane. This lane or driveway has existed for

more than twenty-one years prior to the filing of the bill and has been used, whenever they wished to use it, by plaintiff, his family, his employees, his predecessors in title, their tenants and the public generally. The defendants barricaded said lane or driveway and have interfered with plaintiff's use of the same.

We granted a preliminary injunction in this case. When it came to the hearing, by agreement entered upon the record, the parties agreed that the hearing should be a final one. The case is in a very narrow compass. The testimony leaves no doubt in our mind but what the plaintiff would have a perfect right to this lane or driveway if it were laid out over arable land. He produced upon the witness-stand neighbors and prior owners and tenants of his property, who testified as to the use of the lane or driveway for more than twenty-one years by themselves, by their tenants and by others. Plaintiff testified that he knew of its use personally for over twenty-three years last past, and one of his witnesses said that it was in the same condition that it now is for forty-five years. Even one of the defendants' own witnesses testified that he had used it for thirty-six years. Eight witnesses testified as to their personal knowledge of the use of the lane for over twenty-one years, and that use was by the owners, the tenants and anyone who had occasion to go in and out from the farm now owned by the plaintiff. Under the authorities, the mere fact that one of the plaintiff's witnesses testified that he had asked the then owner of defendants' property to use the lane and that he replied he could use it as long as he owned it would not defeat the present claim. At the most, it would merely cast the burden on the plaintiff, the present owner, to rebut the presumption of grant. Under the decisions, their testimony was ample with respect to use and length of time. It is unnecessary to cite many authorities. In Garrett v. Jackson, 20 Pa. 331, Mr. Chief Justice Black said: "A passage by one man over the land of another, with the special permission of the owner on every occasion of its use, will not raise the presumption of a grant, no matter how often it may occur, nor how long continued. So a license to use the road for a certain defined period, and the enjoyment of it under such license, will give no right after the expiration of the time. But where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse, and an uninterrupted adverse enjoyment for twenty-one years is a title which cannot be afterwards disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with a claim of right by the other party." To the same effect, see Pierce v. Cloud, 42 Pa. 102; Hudson v. Watson, 11 Pa. Superior Ct. 266. However, those decisions do not apply to unenclosed woodland like the land in suit. On April 25, 1850, a law was passed, the twenty-first section of which provides: "That no right of way shall hereafter be acquired by user, where such way passes through unenclosed woodland; but, on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure." That act first came before the Supreme Court in the case of Brake v. Crider, 107 Pa. 210. That case decided that one cannot acquire a right of way over unenclosed woodland unless the evidence shows that the right of way has been acquired twenty-one years prior to September 25, 1850. In Kurtz v. Hoke, 172 Pa. 165, practically the same situation, with respect to the location of the properties and their character, was presented as in this case. The syllabus of the case is: "Prior to the act of

April 25, 1850, sec. 21, P. L. 572, which declared that no prescriptive right to a road through uninclosed woodland should thereafter be acquired, a person could acquire by continuous use for twenty-one years a right to a way through uninclosed woodland, and mere immaterial changes in the roadbed caused by washing of rains and time did not interrupt the continuity of the use, if the road substantially remained the same road.

"Since the act of April 25, 1850, declaring that no prescriptive right to a road through uninclosed woodland should thereafter be acquired, a right by continuous use for twenty-one years of a way over arable land does not draw with it a right of way over uninclosed woodland belonging to the owner of the arable land and adjoining such land."

We have not considered defendants' contention that the plaintiff is not entitled to the present right of way because he had other means of access to his farm. There is nothing in such a contention. A man may have many means of access to his farm, and he cannot be deprived of the right to use any of them by a simple command, "Use your other rights of way, because they are enough, and leave mine alone." If he has a right to use another man's land for a passage over it, that ends the matter. In the present case, the plaintiff is only deprived of his right by reason of the fact that the defendant's property is unenclosed woodland.

And now, July 21, 1930, this cause came on to be heard at this term upon final hearing, and upon consideration thereof, it is ordered, adjudged and decreed that the relief prayed for in the bill be denied and that the bill of the plaintiff be dismissed, at the costs of the plaintiff. The prothonotary will enter this decree *nisi* and give notice of same to parties or their counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree. From Henry D. Maxwell, Easton, Pa.