## NATHANIEL POPE *vs.* GEORGE T. DEVEREUX.

Evidence of an executed oral agreement between the owners of the dominant and servient tenements to discontinue an old way, and substitute a different one, is competent evidence of a surrender of the old right of way.

The admissions of one of several *cestuis que trust* of real estate are inadmissible to defeat the title of their trustee.

Where a right of way, claimed by prescription, is sought to be supported by evidence of a beaten, visible path, used by those from whom the present owner derived title; this evidence may be explained by proof that other people were in the habit of crossing the close, not uniformly, but generally, in the same path.

In an action for obstructing an alleged right of way by ploughing it up, evidence that for many years the whole close over which the right of way is claimed has been ploughed and cultivated almost every year, without objection of the claimant of the right of way, is competent.

ACTION OF TORT.   The declaration alleged " that the plaintiff was the owner of a certain tract of land in Danvers; that there was a way leading to the same from another parcel of land, which the plaintiff had a right to use as a foot way; and that the defendant ploughed up the said way, and planted corn and other vegetables in said way, so that the plaintiff could not use the same."   In answer, the defendant " says that he has ploughed and planted his own land, and no other; and denies that there is any way leading across the defendant's land, which the plaintiff has a right to use as a foot way."

At the trial in the court of common pleas, before *Sanger*, J., the plaintiff, to prove title to his close, introduced a deed made by Amos Cross and Ruth his wife in 1841, conveying that close, the fee of which was in Ruth, and a much smaller lot, owned by Amos in his own right, to the plaintiff, in trust, to permit Amos and wife to occupy and enjoy said estates during their joint lives, and, at the death of either, to convey the whole to the survivor in fee simple, free from the trust; but empowering the plaintiff, if necessary for the comfortable support of Ruth, to sell the land, or such part thereof as might be required for that purpose.

The plaintiff claimed the right of way by prescription.   It

was admitted that prior to 1812 there was a way substantially as claimed by the plaintiff.

The defendant offered in evidence the declarations of the plaintiff, to the effect that about 1812 the old way was discontinued by agreement of the then owners of the two closes, and that the defendant's grantor, in consideration of the relinquishment of the old way by the plaintiff's grantor, agreed to open another way across a different field. He also offered to prove that Amos Cross, the plaintiff's *cestui que trust*, had stated that he had heard of such an agreement. The plaintiff objected to the evidence, but the judge admitted it.

The plaintiff offered evidence tending to show an uninterrupted use of the way by his *cestuis que trust*, and their grantors, for forty years, and also an uninterrupted adverse use for twenty years. There was contradictory evidence as to whether the plaintiff's *cestuis que trust*, and those under whom they claimed, had always used the same way, or whether they had been in the habit of going over the field at random; and some question was made as to the uniformity with which one of the termini had been used. The plaintiff offered evidence tending to show that for a long time there had been a beaten path across the field, and that it had been used. Some of the witnesses for the plaintiff were asked on cross-examination, in order to show, as stated by the defendant's counsel, that the use by Cross and his grantors was of no particular line, " Whether Mr. Cross ever passed over the field in other directions ? " Objection was made to the question, but the judge allowed it to be put.

Evidence " that many other people were in the habit of crossing the field, not uniformly, but generally, in the same path claimed by the plaintiff as his way," was admitted, against the plaintiff's objection, " for the purpose of controlling or explaining the evidence in regard to there being a beaten or visible path, upon which fact the counsel for the plaintiff said he relied as one of the circumstances tending to show that Cross and his grantors always used the same path, although not to show the extent to which they used it."

The judge ruled that, upon the pleadings, the ploughing up

of the way was admitted to be an obstruction to the right of way claimed by the plaintiff; and, though under objection, allowed the defendant to introduce evidence tending to show " that the field, including the way claimed, had been ploughed up at various times for the last forty years, and that for the last fifteen years it had been ploughed and cultivated nearly every year; and that the plaintiff had made no complaint thereat until within four or five years."

The plaintiff requested the judge to instruct the jury, that " if they were satisfied that previously to 1812 those under whom the plaintiff claimed had a right of way across the defendant's field, as laid in the declaration, the burden of proof was on the defendant to show the loss of that right; and that no parol agreement of the parties then owning the respective fields, to close up the way in question and substitute another, could have any binding force, or have any weight with them, unless they were satisfied that under such agreement said way had actually been discontinued as a foot way for the space of twenty years, and the plaintiff had actually been prevented from using said way for twenty years consecutively." Upon this request, the judge instructed the jury, " that although they were satisfied that in 1812 those under whom the plaintiff claimed had a right of way across the defendant's land, as laid in the declaration, yet if they were satisfied there was such an agreement by parol to close up said way and substitute another therefor, and in pursuance of such agreement this right of way was surrendered; or for any reason the plaintiff, or those under whom he claims, gave up this right of way, or did not use it for the term of twenty years consecutively, the plaintiff was not entitled to recover, unless he should satisfy them that he had since acquired the right of way claimed."

The verdict was for the defendant, and the plaintiff alleged exceptions.

*S. B. Ives, Jr.* for the plaintiff.

*W. C. Endicott,* for the defendant.

The decision was made at November term 1856.

THOMAS, J    This is an action of tort for the obstruction of

an alleged foot way over the defendant's land to land of the plaintiff. The answer denies the existence of any right of way in the plaintiff over land of the defendant. The plaintiff claims the right of way by prescription. It was admitted that prior to 1812 there was a right of way substantially as claimed by the plaintiff.

The defendant offered evidence, to wit, declarations of the plaintiff, that, about that year, the old way was, by the agreement of the then owners and the respective grantors of the plaintiff and the defendant, discontinued; the defendant's grantor, in consideration of the relinquishment by the plaintiff's grantor of the old way, agreeing to open another way over a different field. This evidence was objected to, but admitted. Rightly, we think, upon the authority of *Larned* v. *Larned,* 11 Met. 421.

The plaintiff says, an unexecuted parol agreement to give up the easement is not valid. That is good law. *Dyer* v. *Sanford,* 9 Met. 395. But this was not an unexecuted agreement. On the other hand, the instructions put the case upon a surrender of the old way, made in pursuance of the agreement for the new.

It is not the duration of the cesser to use the easement, but the nature of the act done by the owner of the easement, or of the adverse act acquiesced in by him, and the intention which the one or the other indicates, that is material. *The Queen* v. *Chorley,* 12 Ad. & El. N. R. 515. And a cesser of use for a less period than twenty years, accompanied by acts clearly indicating the intent to abandon the right, is sufficient. *Moore* v. *Rawson,* 3 B. & C. 332. *Liggins* v. *Inge,* 7 Bing. 682. *Dyer* v. *Sanford,* 9 Met. 395.

The defendant also offered the admissions of Amos Cross, the plaintiff's *cestui que trust,* that he had heard of the agreement for the alteration of the way. These admissions were objected to, but admitted.

We think this evidence should have been excluded. The fee of the land, to which the right of way was claimed to be appurtenant, was in Ruth, the wife of Cross. Cross and his wife joined in a deed conveying this land, and a small lot owned by

Cross in his own right, to the plaintiff, in trust, to permit Amos and his wife to enjoy said estates during their lives, and, at the death of either of them, to convey the whole to the survivor, free from the trust, and in fee simple ; but, if necessary for the support of Ruth, the plaintiff was empowered to sell the land, or such part of it as might be required for that purpose.

Amos Cross then was not the sole person interested in the estate, nor the person most largely interested. In *May* v. *Taylor*, 6 Man. & Gr. 261, where the court excluded the admissions of the *cestui que trust*, there is an intimation that if she had been the sole person interested, her written license to the lessee to " displant " a part of the hop lands, which the lessee had covenanted to manage in a good and husbandlike manner, might be competent evidence for the lessee in an action by the trustee for breach of the covenant. But even this is, at the best, doubtful. It might have been the very object and purpose of creating the trust, to prevent the *cestuis que trust* from conveying or wasting the estate. If they cannot impair the legal title by their grant, there is no sound reason why they should by admissions *in pais*. There is less reason why the admissions of one should affect the interest of the other *cestui que trust*.

The other evidence to which exception was taken was rightly admitted, for the reasons and under the limitations well stated by the presiding judge.          *Exceptions sustained.*